# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SARAH P. HIGGINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:04CV00690 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Sarah P. Higgins seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying her claim for Disability Insurance Benefits. The Commissioner's denial decision became final on May 27, 2004, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

### The Claimant

Plaintiff was born on March 19, 1965, and was 37 years of age on her alleged onset date of disability. She has more than a high school education and past relevant work as a waitress, a construction laborer, a supervisor at the Board of Elections, and a human resources administrative assistant. Plaintiff alleges disability as of October 26, 2001 due to fibromyalgia, mitral valve prolapse, chronic fatigue, depression, and cognitive problems.

## The Administrative Proceedings

Plaintiff filed an application for Disability Insurance Benefits on June 5, 2002 alleging disability as of October 26, 2001, due to fibromyalgia, mitral valve prolapse, chronic fatigue, depression, and cognitive problems. Her claim was denied initially and on reconsideration, and Plaintiff then filed a request for a hearing. A hearing was held on November 12, 2003, in Greensboro, North Carolina before ALJ Emanuel E. Edwards, and a decision denying benefits was issued on February 13, 2004. Plaintiff filed a request for review, and on May 27, 2004, the Appeals Council found no basis for review of the ALJ's decision. Plaintiff then filed this request for judicial review in a timely manner.

The findings of the ALJ relevant to this review include the following:

1. Plaintiff met the disability insured status requirements of the Social Security Act on October 26, 2001, her alleged onset date of disability, and continued to meet them through at least February 13, 2004, the date of the ALJ's decision.

2. Plaintiff has not engaged in substantial gainful activity since October 26, 2001, her alleged onset date of disability.

3. Plaintiff has a "severe" combination of fibromyalgia, dysthymic disorder, and anxiety. Furthermore, Plaintiff has a history of severe substance abuse, which is not material to a finding of disability. Finally, Plaintiff has non-severe

gallbladder disease, bicuspid aortic valve, mitral valve prolapse, and food allergies.

4. Plaintiff does not have an impairment, or combination of impairments, that meet or equal the ones listed in Appendix 1, Subpart P, Regulations Number 4.

5. Plaintiff's allegations concerning her limitations are not entirely credible.

6-7. Considering all of the medical opinions in the record concerning the severity of Plaintiff's impairments, Plaintiff retains the residual functional capacity to perform a wide range of "light" work, so long as she avoids workplace hazards such as unprotected heights and heavy equipment. Because of Plaintiff's depression and anxiety, she may experience cognitive and emotional difficulties; however, Plaintiff retains the residual functional capacity to perform a significant range of unskilled work.

8. Plaintiff is unable to perform any of her past relevant work.

9-12. Plaintiff is a "younger individual," with more than a high school education, no transferable skills and the residual functional capacity to perform a wide range of light work.

13. Plaintiff's capacity for unskilled light work is not significantly eroded by Plaintiff's non-exertional limitations. Accordingly, Medical-Vocational Rule 202.21 directs a finding that Plaintiff is "not disabled."

14.     Plaintiff was not under a "disability," as defined by the Social Security Act, at any time through February 13, 2004, the date of the ALJ's decision.

## The Scope of Review

The scope of judicial review by this Court of the Commissioner's decision denying benefits is limited. *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). The court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case *de novo*. *Id.* Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

## Discussion

In making a decision on Plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. § 404.1520 (2005). Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed

impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. The burden of persuasion is on the claimant through the fourth step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education and work experience. *Id.*

In this case, the ALJ found that Plaintiff met the disability insured status requirements of the Social Security Act on October 26, 2001, her alleged onset date of disability, and continued to meet them through at least February 13, 2004, the date of the ALJ's decision. At step one of this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 26, 2001, her alleged onset date of disability. Proceeding to steps two and three, the ALJ found that Plaintiff suffered from a "severe" combination of fibromyalgia, dysthymic disorder, and anxiety, as well as non-severe gallbladder disease, bicuspid aortic valve, mitral valve prolapse, and food allergies,[1] but that she did not have an impairment which met or equaled the criteria of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff retained the capacity to perform light work, so long as she avoided workplace hazards such as unprotected heights and heavy equipment. Because of Plaintiff's depression and anxiety, the ALJ also concluded that Plaintiff may experience cognitive and emotional difficulties. Accordingly, the ALJ

---

[1] The ALJ also found that Plaintiff suffered from a history of severe substance abuse, which was not material to a finding of disability. (Tr. at 22.)

determined that Plaintiff retained the residual functional capacity to perform a significant range of unskilled light work, but could no longer perform her past relevant work as a waitress, a construction laborer, a supervisor at the Board of Elections, or a human resources administrative assistant.

Finally, at step five, the ALJ found that Plaintiff is a "younger individual," with more than a high school education and no transferable skills. Therefore, considering Plaintiff's age and educational background, as well as a residual functional capacity for light, unskilled work, the ALJ found that Medical-Vocational Rule 202.21 directed a finding that Plaintiff was "not disabled," as defined by the Social Security Act, at any time through February 13, 2004, the date of the ALJ's decision.

In this action for judicial review, Plaintiff raises several issues for the Court's review. First, Plaintiff argues that the ALJ's determination that Plaintiff's dysthymic disorder does not meet Listing 12.04 "*Affective Disorders*" is not supported by substantial evidence. (Pleading No. 11 at 3-8.) Listing 12.04 requires:

    A.    Medically documented persistence, either continuous or intermittent, of one of the following:
        1.    Depressive syndrome characterized by at least four of the following:
            a.    Anhedonia or pervasive loss of interest in almost all activities; or
            b.    Appetite disturbance with change in weight; or
            c.    Sleep disturbance; or
            d.    Psychomotor agitation or retardation; or
            e.    Decreased energy; or
            f.    Feelings of guilt or worthlessness; or
            g.    Difficulty concentrating or thinking; or
            h.    Thoughts of suicide; or

>           i.      Hallucinations, delusions, or paranoid thinking . . .

>                  . . . .

>   And

>   B.      Resulting in at least two of the following:

>           1.      Marked restriction of activities of daily living; or

>           2.      Marked difficulties in maintaining social functioning; or

>           3.      Marked difficulties in maintaining concentration, persistence or pace; or

>           4.      Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, Subpt. P, App. 1, 12.04 (2005).

It is Plaintiff's burden at step three to produce evidence that she meets or equals a listing. *See* 20 C.F.R. § 404.1512 (2005). As Plaintiff points out in her brief, it is difficult to determine from the ALJ's opinion whether he found that Plaintiff meets the "A(1)" criteria of Listing 12.04. (Pleading No. 11 at 4-5); *see* Tr. at 21. However, the ALJ clearly found, in a multi-paragraph discussion, that Plaintiff failed to meet the "B" criteria of Listing 12.04 set forth above. (Tr. at 21-22.) As it was necessary for Plaintiff to meet both the "A(1)" and the "B" portions of the Listing, the ALJ's negative evaluation of Plaintiff's dysthymic disorder under the "B" criteria effectively terminates his need for further analysis.

In his opinion, the ALJ found that Plaintiff met none of the "B" criteria of Listing 12.04. (Tr. at 21-24.) Specifically, the ALJ noted that Plaintiff had "mild" restrictions of activities of daily living; "mild" difficulties in maintaining social functioning; suffered

"moderately" from deficiencies of concentration, persistence or pace; and has "never" suffered from an episode of deterioration or decompensation in work or work-like settings. *Id.* at 21-22. The Court finds the ALJ's decision to be supported by substantial evidence.

"Activities of daily living include . . . cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, Subpt. P, App. 1, 12.00C1 (2005). Plaintiff testified at the hearing that she lives at home with her partner; is the non-custodial parent of two daughters, ages 14 and 16; and does only small amounts of housework, such as loading the dishwasher. (Tr. at 326, 332-33.) Plaintiff further testified that she has a driver's license and drives a car about twice a week to the store and drug store, but that in April of 2002 she had driven 75 miles to her daughter's dance recital; that during portions of her illness, she made jewelry to pass the time; that she ate dinner out "every night" at Stratford Station Grill with her partner; that she read one or more books a week; that she did yoga for 30 minutes each morning; that she was walking "[a] half block at best" each day; and that she had swum in the past. *Id.* at 192, 194, 324-25, 332-34, 336-37.

On August 2, 2002, Plaintiff was evaluated by Richard L. Spencer, M.D., the Consultative Examiner ("CE"), who performed a psychological examination of Plaintiff. Dr. Spencer noted that Plaintiff drove herself to the assessment site, was dressed in casual and

seasonally appropriate clothing, and that her grooming was appropriate.[2] *Id.* at 191. Plaintiff told Dr. Spencer that her partner assisted her with showering and dressing, that she tried to walk for 10 minutes a day, and that her hobbies included painting with acrylics and reading. *Id.* at 195. At a visit to Dr. Amy Sapp, her family doctor, on September 18, 2003, Plaintiff stated that she had begun swimming three times a week, for 30 minutes at a time. *Id.* at 273. Finally, Plaintiff also testified that she had not been able to balance her own checkbook consistently since October of 2001. *Id.* at 335. Accordingly, the ALJ's finding that Plaintiff ability to perform "activities of daily living" is "mildly" restricted is supported by substantial evidence.

The ALJ also found that Plaintiff's organic mental disorder placed only "mild" limitations on her social functioning.

> Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers. You may demonstrate impaired social functioning by, for example, a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation.

20 C.F.R. pt. 404, Subpt. P, App. 1, 12.00C2 (2005).

Plaintiff testified at the hearing that she lived with her partner and her children, when she has visitation; and that she attended church, AA meetings, and fibromyalgia support group meetings. (Tr. at 333-34.) Dr. Spencer, the CE, noted that Plaintiff had a committed,

---

[2] At the Trinity Center, Bert Gronseth, M.S., NCC, and Robert Rominger, Ph.D, who evaluated Plaintiff on or February 11, 2003 also observed that Plaintiff appeared "clean and neatly dressed." (Tr. at 218.)

-9-

stable relationship with her partner of five years, following a failed marriage and an abusive relationship with a past partner. *Id*. at 192. Plaintiff told the CE that her cousin (adopted brother) visited her every day, and that her partner's family visited several times a week. *Id*. at 195. Plaintiff told the CE she had a "wonderful" relationship with bosses and co-workers at her last job, and Dr. Spencer rated her adjustment in social areas as "fair." *Id*. at 197. Accordingly, the Court finds that the ALJ's determination that Plaintiff had only "mild" difficulties maintaining "social functioning" is also supported by substantial evidence.

Listing 12.00C3 next requires the ALJ to evaluate Plaintiff's "concentration, persistence or pace."

> Concentration, persistence or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in the work settings.
>
> . . .
>
> . . . In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits.

20 C.F.R., pt. 404, Subpt. P, App. 1, 12.00C3 (2005).

The psychological examination performed by Dr. Spencer, contained several items designed to assess Plaintiff's concentration, persistence and pace. Dr. Spencer observed that Plaintiff was of average intellectual functioning, and that she was able to compute simple addition, subtraction, multiplication and division. (Tr. at 197.) Dr. Spencer noted that Plaintiff's immediate memory of digits forward was in the normal range, while her memory

-10-

for digits backwards was judged to be impaired. *Id.* at 196. Dr. Spencer judged Plaintiff's thought processes to be logical and coherent, her attention and recall to be adequate, and her abstracting ability to be normal. *Id.*

Testing at the Trinity Center by Mr. Gronseth and Dr. Rominger in February of 2003 reached similar results. *See* Tr. at 217-20. For example, Plaintiff demonstrated at least average, if not above average, intelligence, and was able to perform simple mathematic calculations. *Id.* at 219. Based on these tests, Mr. Gronseth and Dr. Rominger concluded that Plaintiff "may be able to . . . maintain concentration, persistence and pace. However, there may indeed be sufficient physical pain associated with the myriad somatic symptoms to disrupt such functioning." *Id.* at 220. Therefore, this Court holds that the ALJ's finding that Plaintiff "often" suffered from deficiencies of concentration, persistence or pace is supported by substantial evidence.

Finally, the ALJ found that Plaintiff never suffered from "episodes of decompensation." "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning . . . . " 20 C.F.R. pt. 404, Subpt. P, App. 1, 12.00C4 (2005). There is no evidence in the record to indicate that Plaintiff has ever suffered from an episode of decompensation, and Plaintiff does not argue otherwise in her brief.

In summary, the Court holds that the ALJ's finding that Plaintiff's dysthymic disorder does not meet the "B" criteria of Listing 12.04 is supported by substantial evidence.

-11-

Plaintiff's second argument is that the ALJ's finding that Plaintiff's impairments could not reasonably be expected to produce Plaintiff's symptoms is not supported by substantial evidence. (Pleading No. 11 at 11-12.) Specifically, Plaintiff asserts that the ALJ erred in finding that Plaintiff's testimony regarding her subjective complaints of pain were "only partially credible." *Id.* at 12, *citing* Tr. at 23.

The Fourth Circuit has established a two-step process for evaluating subjective complaints of pain, in accordance with the Commissioner's regulations. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996); 20 C.F.R. § 404.1529 (2005); *See also* Social Security Ruling 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements* ("SSR 96-7p"). At the first step, Plaintiff must produce objective medical evidence of an impairment which could reasonably be expected to produce the pain she alleges. *Craig*, 76 F.3d at 594; 20 C.F.R. § 404.1529(b) (2005). As further explained by the court in *Craig*,

> [F]or pain to be found to be disabling, there *must* be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but *the pain the claimant alleges she suffers*. The regulation thus requires at the threshold a showing by objective evidence of the existence of a medical impairment "which could reasonably be expected to produce" the actual pain, in the amount and degree, alleged by the claimant.

76 F.3d at 594.

In this case, the ALJ found at step one of the *Craig* analysis that Plaintiff was suffering from fibromyalgia, an impairment which could reasonably be expected to produce

pain and limitations of mobility. (Tr. at 23.) Moving on to step two of the *Craig* analysis, the ALJ found that Plaintiff's claims with regard to the intensity and persistence of her symptoms was "only partially credible." *Id.*

Plaintiff argues that the ALJ's analysis of Plaintiff's subjective complaints of pain is flawed because the ALJ bases his decision, *in part*, on the lack of objective medical evidence supporting Plaintiff's claim that she suffers from disabling fibromyalgia. Thus, Plaintiff argues that the ALJ's analysis is in contravention of *Hyatt v. Sullivan*, 899 F.2d 329 (4th Cir. 1990). Plaintiff's reliance on *Hyatt* is misplaced. The Court in *Hyatt* held that:

> Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not *determinative*.

*Id.* at 337 (emphasis added). *See also Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994)(holding that the ALJ's consideration of the lack of objective evidence was not in error when the ALJ "cited many additional reasons . . . for finding [plaintiff's] testimony not credible.") Furthermore, "[w]hile testimony as to pain must always be carefully weighed, pain is not disabling *per se*, and subjective evidence of pain cannot take precedence over objective evidence or lack thereof.'" *Pritt v. Shalala*, No. 93-2055, 1994 WL 418912, at *1 (4th Cir. Aug. 11, 1994)(unpublished)(citations omitted).

In this case, the ALJ relied not only on the lack of objective medical evidence to support Plaintiff's subjective complaints of pain, but also on Plaintiff's activities of daily

-13-

living, such as reading, visiting with relatives, and performing minimal housework;[3] Plaintiff's ability to maintain a stable, long-term relationship, and attend church, AA meetings and fibromyalgia support group meetings; Plaintiff's exaggerated responses to light touch and musculoskeletal motion; Plaintiff's apparent ability to move with greater agility when she believed she was not being observed, such as in the hallway at Dr. Eric Melvin's office; Plaintiff's ability to drive and travel alone; and the recommendations of Plaintiff's physicians that she stop smoking, add dietary supplements, and begin a regular exercise program. (Tr. at 19, 21, 23.)

Furthermore, the Court notes that, "[u]ltimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The ALJ's determination on this regard is entitled to a deferential standard of review.

> The ALJ's determination on the credibility of the plaintiff's testimony regarding pain will be upheld on appeal as long as there is some support in the record for the ALJ's position and it is not patently wrong, since the ALJ is in the best position to observe witnesses and assess their credibility.

*Lewis v. Barhhart*, 201 F.Supp.2d 918, 935 (N.D.Ind. 2002)(citations omitted). Accordingly, the Court finds that the ALJ's determination that Plaintiff's subjective complaints of pain are not fully credible is supported by substantial evidence.

---

[3] Plaintiff also testified that she had difficulty with bathing and self care, and could not get out of bed, but the ALJ stated that he did not find this testimony to be credible. (Tr. at 23.)

Plaintiff's final argument before the Court is that the ALJ's evaluation at step five is not supported by substantial evidence. (Pleading No. 11 at 9-10.) In his opinion, the ALJ found that Plaintiff retained the residual functional capacity to perform work at a light exertional level with the following limitations: no exposure to heights or dangerous machinery and limited to simple, routine, repetitive tasks. (Tr. at 24.) Plaintiff argues that these nonexertional limitations erode the light occupational bases sufficiently to require the ALJ to consult a Vocational Expert (VE) to determine whether sufficient jobs remain in the national economy considering Plaintiff's age, education, and past relevant work. (Pleading No. 11 at 9-10.)

The regulations provide that light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b) (2005). The regulations further define light work as follows:

> Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

*Id.* The Court finds that limiting Plaintiff to simple, routine, repetitive work, and prohibiting her from performing work that exposes her to hazards, such as large machinery or exposed heights, does not significantly erode the light occupational base.

As to the non-exertional mental limitations which the ALJ included in Plaintiff's residual functional capacity to accommodate Plaintiff's anxiety and depression, the Court

notes that all of the jobs considered under the Medical-Vocational Guidelines are simple, routine, repetitive tasks, or unskilled work. *See Allison v. Apfel*, No. 99-4090, 2000 WL 1276950, at *4 (6th Cir. Aug. 30, 2000)(Simple, routine repetitive work is synonymous with unskilled work.) Unskilled work has "simple" duties which need "little or no judgment" and which can be learned in a short time frame. 20 C.F.R. § 404.1568(a) (2005). *See also* Social Security Ruling 83-10, *Titles II and XVI: Determining Capability to do Other Work – The Medical-Vocational Rules of Appendix 2* ("SSR 83-10") ("The [residual functional capacity] considered under each rule reflects the presence of nonexertional capabilities sufficient to perform *unskilled* work.") Therefore, the ALJ's inclusion of a non-exertional limitation of simple, routine, repetitive tasks in Plaintiff's residual functional capacity does not eliminate a single job from the Medical-Vocational Guidelines.

Furthermore, limitations "only from being on unprotected elevations and near dangerous moving machinery does not have a significant effect on work that exists at all exists at all exertional levels." Social Security Ruling 85-15, *Titles II And XVI: Capability to do Other Work–-The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments* ("SSR 85-15"). Therefore, the ALJ's limit on Plaintiff's exposure to hazards such as heights and dangerous machines does not significantly limit the light occupational base.

Accordingly, the Court finding that the ALJ's decision to base his step-five decision on the Medical-Vocational Guidelines was not legal error.

-16-

## Conclusion

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for summary judgment [Pleading No. 10] be denied, that the Commissioner's motion for judgment on the pleadings [Pleading No. 12] be granted, and that the decision of the Commissioner be affirmed.

                                              /s/ P. Trevor Sharp
                                        United States Magistrate Judge

Date: September 16, 2005